UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:26-CV-00583-GNS

NERY ARANGURY REAL PETITIONER

v.

JASON WOOSLEY, in his official capacity as
Jailer of the Grayson County Detention Center;
FIELD OFFICE DIRECTOR, in his or her official capacity as
Field Office Director of the Chicago Field Office of
Enforcement and Removal Operations,
U.S. Immigration and Customs Enforcement;
DAVID J. VENTURELLA, in his official capacity as
Acting Director, U.S. Immigration and Customs Enforcement;
MARKWAYNE MULLIN, in his official capacity as
Secretary, U.S. Department of Homeland Security; and
TODD BLANCHE, in his official capacity as
Attorney General of the United States RESPONDENTS

**ORDER**

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus (DN 1).

In April 2023, Petitioner Nery Arangury Real ("Real"), a native and citizen of Colombia, entered the United States without inspection. (Pet. ¶¶ 1-2, DN 1; Resp'ts' Resp. Show Cause Order Ex. 3, at 1-2, DN 8-3). When apprehended, she expressed fear of returning to her home country was placed in expedited removal proceedings pursuant 8 U.S.C. § 1225(b)(1). (Pet. ¶¶ 2-3). In lieu of referring Real for a credible fear-interview with an asylum officer, the Department of Homeland Security ("DHS") elected to parole her into the country pursuant to 8 U.S.C. § 1182(d)(5)(A) and released her. (Pet. ¶¶ 3-4; Resp'ts' Resp. Show Cause Order Ex. 2, at 2, DN 8-2; Resp'ts' Resp. Show Cause Order Ex. 5, at 1, DN 8-5).

Between the time of her parole and her recent detention, Real had lived in Wisconsin, and she filed a timely application for asylum. (Pet. ¶ 7). She also obtained an employment authorization, which is valid through September 10, 2029, and has been employed. (Pet. ¶ 7; Pet. Ex. A, at 1, DN 1-2).

On August 11, 2026, Real attended a scheduled appointment at an Immigration and Customs Enforcement ("ICE") office in Milwaukee where she was served with a Warrant for Arrest of Alien, arrested, and detained. (Pet. ¶ 8; Resp'ts' Resp. Show Cause Order Ex. 2, at 2-3; Resp'ts' Resp. Show Cause Order Ex. 6, at 1, DN 8-6). She is currently housed at the Grayson County Detention Center. (Pet. ¶ 9).

On August 27, 2026, Real filed the Petition for Writ of Habeas Corpus against Respondents: Jason Woosley, Grayson County Jailer; Field Office Director of the Chicago Field Office of ICE; David J. Venturella, Acting Director of ICE; Markwayne Mullin, Secretary of DHS; and Todd Blanche, Attorney General of the United States. (Pet. ¶¶ 44-48). She challenges her continued detention, and alleges violations of the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. (Pet. ¶¶ 82-100).

A writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). In seeking habeas relief, Real bears the burden of proving by a preponderance of the evidence that her detention is unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022).

**A. <u>INA</u>**

Respondents contend that Real is subject to expedited removal under 8 U.S.C. § 1225(b)(1). (Resp'ts' Resp. Show Cause Order 3-7, DN 8). This statute applies to the government's determination as to the admissibility of noncitizens into the country, which "generally begins at the Nation's borders and ports of entry . . . ." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). When an applicant for admission requests asylum, he or she "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

"Section 1225(b)(1) governs noncitizens: (1) who are inadmissible for lack of proper entry documents . . . ; and (2) who fall within either" Section 1225(b)(1)(A)(i) because they are aliens arriving into the United States or Section 1225(b)(1)(A)(iii)(II). *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 293 (E.D.N.Y. 2025) (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II)). Under Section 1225(b)(1), a noncitizen who has been detained "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit,' pursuant to Section 1182(d)(5)(A)." *Id.* at 294 (quoting *Jennings*, 583 U.S. at 288). It is important to note, however, that "[p]arole is 'not [to] be regarded as an admission of the alien[,] and when the purposes of such parole . . . have been served,' Section 1182(d)(5)(A) mandates that 'the alien shall forthwith return or be returned to the custody from which [s]he was paroled.'" *Id.* (second and third alterations in original) (quoting § 1182(d)(5)(A)). Following the termination of parole, the noncitizen's "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). The INA defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted . . . ." 8 U.S.C. § 1225(a)(1).

Respondents contend that Real is subject to expedited removal under Section 1225(b)(1) after she tried entering the United States without the necessary documents.[1] (Resp'ts' Resp. Show Cause Order 1, 3; Resp'ts' Resp. Show Cause Order Ex. 1, at 2, DN 8-1). Because more than entry without the necessary documents is necessary to warrant mandatory detention, the Court will consider Section 1225(b)(1)(A)(i) and (iii)(II).

In determining whether Real is subject to detention under 8 U.S.C. § 1225(b)(1), the Court must interpret that provision. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute . . . .'" (quoting *Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883)).

Section 1225(b)(1)(A) outlines the procedures for "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled[.]" 8 U.S.C. § 1225(b)(1)(A). The title of the statute refers to the inspection of persons entering the country by immigration officers and uses the term "arriving aliens." "The use of 'arriving' to describe noncitizens strongly indicates that the statute governs the entrance of noncitizens to the United States. This reading is bolstered by the fact that § 1225 clearly establishes an inspection scheme for when to let noncitizens into the country." *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025) (citing 8 U.S.C. § 1225; *Dubin v. United States*,

---

[1] While Real claimed asylum but did not receive a credible-fear interview, she was nevertheless granted parole into the United States.

599 U.S. 110, 121 (2023)); *see also Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *5 (E.D. Mich. Oct. 29, 2025) (discussing *Pizarro Reyes*).

Real contends that she is no longer an arriving alien to whom Section 1225(b)(1)(A)(i) applies. (Pet. ¶¶ 14, 53). At this point, she has lived in the United States for more than three years, and the Court agrees that she no longer qualifies as an arriving alien under Section 1225(b)(1)(A)(i).

Nevertheless, the statute also provides:

> An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II). As this Court has noted, "[c]ourts have thoroughly examined the phrase 'who has not been . . . paroled into the United States' to conclude that § 1225(b)(1)(A)(iii)(II) does not 'authorize[] expedited removal and the detention of noncitizens who . . . were paroled into the United States under Section 1182(d)(5)(A).'" *Martinez v. Herrera v. Olson*, No. 4:26-CV-52-DJH, 2026 WL 561101, at *4 (W.D. Ky. Feb. 27, 2026) (second, third, and fourth alterations in original) (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 297 (E.D.N.Y. 2025)) (citing *Rodriquez-Acurio*, 811 F. Supp. 3d at 299). To the contrary, being paroled "'permit[s] [the noncitizen] to move from the border to the interior of the country' and thus 'serve[s] to do exactly what its plain text conveys—"parole [the noncitizen] into the United States" and out of expedited removal.'" *Id.* (alterations in original) (quoting *Rodriguez-Acurio*, 2025 WL 3314420, at *17). "Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in [the United States] who are not

subjected to expedited removal." *Rodriguez-Acurio*, 811 F. Supp. 3d at 301 (citation omitted). Accordingly, the requirements of expedited removal and mandatory detention under Section 1225(b)(1)(A)(iii)(II) do not apply to Real because she was paroled into the United States prior to her current detention.

Respondents also argue that Real returned to "[her] status as noncitizen subject to expedited removal proceedings" following the expiration or revocation of her parole. (Resp'ts' Resp. Show Cause Order 11). The applicable regulations provide, in relevant part, that "upon expiration of humanitarian parole under Section 1182(d)(5)(A), the noncitizen 'shall be restored to the status that he or she had at the time of parole' and that '[a]ny further inspection or hearing [following expiration of parole] shall be conducted under section 235 or 240.'" *Rodriguez-Acurio*, 811 F. Supp. 3d at 303 (alterations in original) (quoting 8 C.F.R. § 212.5(e)(1)-(2)). This Court has previously rejected Respondents' argument as to Section 1225(b)(1), and noted that "8 C.F.R. § 212.5(e)(2)(i) does not provide that a noncitizen is treated as if 'still at the border,' and thus subject to mandatory detention, upon the expiration of parole." *Martinez Herrera*, 2026 WL 561101, at *4 (quoting *Rodriguez-Acurio*, 811 F. Supp. 3d at 301). Even if 8 U.S.C. § 1182(d)(5)(A) permits Real to be returned to ICE custody, "her case, which necessarily includes the procedures required before detention, shall continue to be dealt with in the same manner as that of any other applicant for admission." *Id.* (internal quotation marks omitted) (quoting *Rodriguez-Acurio*, 811 F. Supp. 3d at 303). "[A]ny other applicant for admission residing in the United States for more than three years would be detained under Section 1226." *Rodriguez-Acurio*, 811 F. Supp. 3d at 303. The record also reflects that the administrative arrest warrant for Real authorizing her re-detention was made pursuant to 8 U.S.C. § 1226. (Resp'ts' Resp. Show

Cause Order Ex. 6, at 1); *see Martinez Herrera*, 2026 WL 561101, at *4; *Rodriguez-Acurio*, 811 F. Supp. 3d at 311-12.

Respondents rely on this Court's decision in *Chirinos Chirinos v. Tindall*, No. 3:25-CV-789-CHB, 2026 WL 926941 (W.D. Ky. Apr. 6, 2026), in arguing that Real "returned to his status as noncitizen subject to expedited removal proceedings" following the revocation of parole. (Resp'ts' Resp. Show Cause Order 9-11). While *Chirinos Chirinos* involved the application of Section 1225(b)(2) rather than Section 1225(b)(1), the Court discussed the application of 8 U.S.C. § 1182(d)(5):

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

"Sections 1225 and 1226 are 'mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226.'" *Rodriguez-Acurio*, 811 F. Supp. 3d at 311 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025)). For the reasons stated above, the Court concludes that Real is detained under 8 U.S.C. § 1226 and is entitled to a custody redetermination hearing. *See Martinez Herrera*, 2026 WL 561101, at *5 (citations omitted).

**B. <u>Due Process</u>**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects."

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). The due process protections of the Fifth Amendment to all persons regardless of status, including a noncitizen. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). Even though detention pending removal is "a constitutionally valid aspect of the deportation process[,]" such detention must satisfy the requirements of due process. *Demore v. Kim*, 538 U.S. 510, 523 (2003).

This Court has repeatedly held that a noncitizen being erroneously detained under Section 1225 when she is eligible for bond under Section 1226(a) can prove a due process violation under the three-part balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g.*, *Aquino v. Woosley*, No. 4:26-CV-43-RGJ, 2026 WL 445033, at *10-12 (W.D. Ky. Feb. 17, 2026); *Coronel-Hernandez v. Woosley*, No. 4:26-CV-20-RGJ, 2026 WL 227011, at *4-5 (W.D. Ky. Jan. 28, 2026); *Martinez-Elvir v. Olson*, 807 F. Supp. 3d 725, 742-44 (W.D. Ky. 2025). The unlawful detention of Real implicates her liberty interest to which due process applies and precludes her from challenging her detention creating a high risk of erroneous deprivation of the liberty interest, which can be remedied by providing a custody redetermination hearing before a neutral immigration judge. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal citation omitted) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)); *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025); *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025). As this Court has recognized, "a 'routine bond hearing before an [immigration judge]' presents 'minimal' fiscal and administrative burdens, and 'there is an established process for doing so that [DHS] can readily follow here.'" *Alonso v. Tindall*, No. 3:25-CV-652-DJH, 2025 WL 3083920, at *9 (W.D. Ky. Nov. 4, 2025) (quoting *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 494 (E.D.N.Y. 2025)).

When individuals have been illegally detained by ICE, courts have ordered their release. *See Patel v. Tindall*, 810 F. Supp. 3d 824, 834 (W.D. Ky. 2025); *Barrera v. Tindall*, No. 3:25-CV-00541-RGJ, 2025 WL 2690565, at *7 (W.D. Ky. Sep. 19, 2025); *see also Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025). "Habeas has traditionally been a means to secure release from unlawful detention . . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). Consistent with these norms, Real must be released, and if she is arrested and re-detained, she is entitled to a bond hearing on the merits under 8 U.S.C. § 1226 before a neutral immigration judge with the government bearing the burden to proving that she is flight risk or danger to the community to justify the denial of bond. *See Soto-Medina v. Lynch*, 817 F. Supp. 3d 612, 629 (W.D. Mich. 2026).

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The Petition for Writ of Habeas Corpus (DN 1) is **GRANTED**. Respondents are directed to release Petitioner Nery Arangury Real from custody **IMMEDIATELY**, and, in the event that she is arrested and re-detained, provide her with a bond hearing before a neutral immigration judge in accordance with 8 U.S.C. § 1226(a). Respondents shall certify compliance with the Court's Order by filing on the docket no later than **5:00 PM CT today**.

2. Upon receipt of the notice of compliance, the Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
November 5, 2026

cc: counsel of record